IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JASON EIDAM #2405834 | § | |
| VS. | § | CIVIL ACTION NO. 6:22cv297 |
| DAVID FAUGHT, et al. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRTE JUDGE

Plaintiff Jason Eidam filed a *pro se* complaint under 28 U.S.C. § 1983 complaining of alleged violations of his rights as a pretrial detainee in the Henderson County Jail. The lawsuit was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Before the Court is the motion by the Defendants, Henderson County, David Faught, and Cody Barnett, seeking summary judgment on Plaintiff's claims. (Dkt. #22.) Plaintiff responded in opposition to the motion twice, and Defendants filed a reply in support of it. (Dkt. ##23, 27.) After special arrangements were made for Plaintiff to have access to recordings relied upon by Defendants in support of their motion, he was permitted to file another supplemental response, and Defendants filed a supplemental reply. (Dkt. ##36, 38.) Plaintiff filed a final sur-reply on May 15, 2023, and the motion is thus fully briefed and ripe for review. (Dkt. #40.) For the reasons explained below, the undersigned recommends that the motion be granted and that summary judgment be entered in favor of Defendants.

## I. Plaintiff's Allegations

Plaintiff alleges in his complaint that he is deaf in his left ear and has reduced hearing in his right ear that varies due to tinnitus. (Dkt. #1 at 5.) This condition was diagnosed during a

previous incarceration in the Michigan Department of Corrections. (*Id.* at 6.) Plaintiff says that he effectively communicates through lip reading and American Sign Language. (*Id.*) After he was incarcerated in the Henderson County jail, he repeatedly sought a sign language interpreter for medical visits, an amplifier for the phone or video phone or video relay services for communication, but his requests and grievances were denied by Defendants Captain Barnett and Major Faught. (*Id.* at 5.) These denials prevented him from communicating effectively with family, friends, and attorneys, and isolated and punished him for not being able to hear. (*Id.*)

Plaintiff alleges that a state court judge had ordered video visits with his 4-year-old daughter, which happened every other week for the first two months Plaintiff was incarcerated. (*Id.*) But then Defendants denied having any court order and stopped those video visits in retaliation for Plaintiff's grievances requesting other accommodations. (*Id.*) Plaintiff alleges that the denial of his requested services is cruel and unusual punishment prior to conviction of any crime. (*Id.* at 6.) He says he is "entitled to use the phone and use a interpreter just like any person in the jail and [he is] not being afforded that right." (*Id.*)

Plaintiff sues Defendants Faught and Barnett in their official and individual capacities and Henderson County, seeking $100,000 in damages from each Defendant and an injunction to provide video relay services, video phone, and an interpreter for him and "any similarly situated person now and in future." (*Id.* at 6–7.)

## II. The Defendants' Motion and Evidence in Support

Defendants assert that there is no genuine issue of material fact from which a jury could determine that Henderson County has a policy, custom, or practice of violating the rights of hearing-impaired inmates. (Dkt. #22 at 2.) They also assert that Defendants Faught and Barnett did not violate Plaintiff's rights, or that any such violation was not of a clearly established right,

and that they are therefore entitled to qualified immunity. (*Id.*) And they assert that Plaintiff's claims for injunctive relief are moot in light of intervening changes and that his claim for damages is barred by the "physical injury" requirement of the Prison Litigation Reform Act of 1996, at 42 U.S.C. § 1997e(e). (Dkt. #22 at 23–24.)

The County relies on the affidavit of Sheriff Botie Hillhouse for the proposition that there is no County policy or custom that evidences deliberate indifference to Plaintiff's rights or the rights of hearing-impaired inmates. (Dkt. #22 at 22; Dkt. #22-3.) Sheriff Hillhouse testifies that he is the sole policy-maker for the Henderson County Sheriff's Office and that no such policy, custom, or practices exists. (Dkt. #22-3 at 1.) Attached to the Sheriff's affidavit is a copy of the Henderson County Jail Inmate Handbook, which provides as follows in a section titled "Equitable Treatment":

> The Henderson County Jail does not discriminate on the basis of disability in the admission or access to, or treatment or employment in its programs and activities.
>
> The Jail Captain has been designated to coordinate compliance with the nondiscrimination requirements contained in Section 35.107 of the Department of Justice regulations. Information concerning the provisions of the Americans with Disability Act, and the rights provided there under, is available from the ADA coordinator.

(Dkt. #22-3 at 20.)

Sheriff Hillhouse also testifies to the facts of the recent history of inmate access to video calls in the Henderson County Jail:

> When Jason Eidam was first booked into the jail in January of 2022, the inmate housing units were equipped with kiosks that allowed the inmates to communicate with visitors over video during certain prescribed periods. In April of 2022, in response to a complaint filed against the Sheriff's Office alleging that the video function was being used to take inappropriate videos and pictures of inmates, the video function was temporarily removed from all kiosks. After the complaint was dismissed, the video function was restored to the kiosks. This temporary removal of the video function was reasonably related to my interest in operating the jail in a manageable fashion, and to prevent similar misuse of the video function while the

lawsuit was pending. The removal of the video function was not targeted at Eidam or any other specific inmate. Upon resolution of the lawsuit, the video chat function was restored to the kiosks for inmate use.

(Dkt. #22-3 at 1–2.)

Also attached to Sheriff Hillhouse's affidavit are a number of formal and informal institutional grievances from Plaintiff related to his hearing impairment. On March 5, 2022, Plaintiff submitted a grievance about the phone, saying "I am a deaf hard of hearing and need a video phone with a sign language facilitator." (Dkt. #22-3 at 28.) Defendant Barnett closed that grievance on March 10 with an indication that he "spoke with inmate." (*Id.*)

On March 28, 2022, Plaintiff again grieved "sign language phone," asserting "capt. I was approved for phone calls with my daughter we both are hearing impaired, how will this be accom[o]dated[?]" (*Id.* at 29.) Defendant Barnett responded that "[t]hey can come up here during visitation hours" and closed the grievance on March 29. (*Id.*) Plaintiff responded to that resolution as follows:

Are u denighing [sic] me a accomidation [sic]. My child is 3yrs old. Ill be happy to file a 42 usc 1983. This is not a idle threat, google my name I have won over 15[.]

(*Id.* at 30.)

On April 6, 2022, Plaintiff grieved the topic "video visit," saying "Judge downs ordered video visits with my d[a]ughter be[c]ause we are both deaf how will I be accommodated the judge does not want children at the jail." (Dkt. #22-3 at 31.) In response to that grievance the following day, Defendant Barnett stated that "[t]he administration received a compl[ai]nt regarding the locations of the kiosks. The decision was made to cancel all video visits while the administration decide[s] how to move forward." (*Id.*)

On May 6, 2022, Plaintiff grieved the topic "sign language phone" and wrote "why am I not being allowed a sign language phone u could use purple. Without it I can not effectively

communicate[.]" (Dkt. #22-3 at 32.) He followed up shortly after midnight the morning of May 9, 2022, with "last chance to resolve." (*Id.*) Defendant Barnett responded, "[t]his issue has already been address[ed] with you and the Major," and the grievance was closed. (*Id.*)

On the afternoon of May 9, 2022, Plaintiff submitted an "official grievance form" asserting as follows:

> I am a Deaf/Hard of Hearing pretrial detainee, I read lips and US ASL sign language to effectively communicate. Major Faught is not allowing me a sign language phone to effective communicate with my friends and family. He could install purple on the kiosk and I would have access to a sign language interpreter. This violates the American Disabilities Act and Rilupa [sic] Religious Land use and Institutional person Act.

(Dkt. #22-3 at 33.) The unsigned institutional response dated May 16, 2022, stated simply, "you have already spoke with the Major regarding this issue." (*Id.* at 34.) Plaintiff appealed that response on May 17, 2022, stating:

> I am Deaf/Hard of Hearing I request a Sign language Interpreter phone.
>
> This can be Done by Downloading a company like Purple on The Kiosk. Not making arrangements is a violation OF The American w/Disabilities Act I have been in Touch with the ACLU and This Grievance exhausts my Administrative remedies.

(*Id.* at 35.) Defendant Faught denied that appeal in a written response dated May 25, 2022:

> I received your appeal on May 20, 2022 and have reviewed your complaint. I have spoken with you in my office during your time incarcerated inside this facility. You were able to hear Captain Barnett and I while we were speaking to you. When I asked about your claims of hearing loss you advised that you had partial hearing. Your appeal is denied.

(*Id.* at 36.)

Plaintiff returned to the informal grievance system on July 22, 2022, with a grievance entitled "deaf," in which he asserted "I need access to a phone for hearing imparred [sic] I can not effectively communicate. I also need a sign language interpreter for med appt. and staff will u

provide[.]" (Dkt. #22-3 at 37.) He followed up around twenty minutes later to say "the federal court has ordered hearing impaired be allowed the same access to phone use as hearing inmates and the use of hearing aids witch [sic] u do not provide." (*Id.*) Defendant Barnett responded, "You have already spoken with the Major regarding this issue," and closed the grievance the same day. (*Id.*)

On July 23, 2022, Plaintiff submitted another informal grievance titled "grievance appeal," stating "you must give amplify[i]er or a sign language interpreter or sign language phone are u denying me help," and he added several hours later that "the major is violating the ADA and my constitutional rights not giving me these services." (Dkt. #22-3 at 38.) Defendant Barnett responded, "You have already grieved this issue back in March. You must appeal the decision to the Major by submitting a written appeal within 5 days of this grievance decision." (*Id.*)

The final "grievance" among the records submitted by Defendants is dated August 12, 2022. (Dkt. #22-3 at 39.) In it, Plaintiff simply stated "heres your sign 6;22cv-297 tyler district court" and added "and cv22-0401-173 henderson county courts[.]"[1] (*Id.*) Defendant Barnett closed the grievance with the comment that "This does not constitute an official grievance." (*Id.*)

Shortly after Plaintiff began complaining about the need for accommodations for his hearing impairment, Defendants Faught and Barnett met with Plaintiff on March 30, 2022, to discuss his willingness to share information he had obtained from other jail inmates about an unrelated matter in exchange for hope of a reduction in his sentence. (Dkt. #22 at 5.) Defendant Faught describes the pertinent aspects of meeting as follows in his affidavit:

---

[1] Available Henderson County public records indicate that Plaintiff initiated Case No. CV22-0401-173 in Henderson County Court on August 11, 2022. It was dismissed in November 2022 pursuant to the election of remedies provision of the Texas Tort Claims Act, presumably due to his prior pleading in this case. *See* Register of Actions for Case No. CV22-0401-173, available at https://portal-txhenderson.tylertech.cloud/PublicAccess/CaseDetail.aspx?CaseID=708924 (last visited Jul. 31, 2023).

> I intentionally spoke in a soft tone, and Mr. Eidam was able to hear and understand everything I was saying and otherwise carry on a conversation normally. He claimed to be completely deaf in one ear, and limited hearing in the other, however, even if true, this did not appear to impact his ability to carry on a normal, verbal conversation in any of the interactions I had with him, or observing him in the jail. Because some of his grievances had threatened the jail with civil rights lawsuits, I asked Mr. Eidam if he actually planned on filing a lawsuit and if he felt that his rights had been violated. He stated that he didn't actually plan on filing a lawsuit and was "just talking shit," and that his rights had not been violated at any point while incarcerated at the Henderson County Jail. He then commended Captain Cody Barnett for helping him out during his incarceration.

(Dkt. #22-1 at 3.)

Faught also testifies that the Henderson County Sheriff's Office never received any order from a judge about video visits, and he corroborates Sheriff Hillhouse's testimony about the timing and reason for the temporary cessation of video functions on the jail kiosks. (*Id.* at 3–4.) He states that "[t]he jail never placed restrictions on Mr. Eidam's ability to have in-person visitation or to send and receive letters" and that Plaintiff "made a total of 492 calls while incarcerated in the Henderson County Jail" without any of his requested accommodations. (*Id.* at 4.)

As attachments to Faught's affidavit, Defendants have submitted his recording of the March 30, 2022 meeting with Plaintiff, as well as recordings of three phone calls from Plaintiff in jail to individuals outside the jail. (Dkt. #22-1 at 41–42.) The Court has listened to the recordings submitted. The March 30, 2022 recording of the meeting with Plaintiff lasts 12 minutes and 18 seconds. (Dkt. 22-1 at 41.) The recording substantiates Defendant Faught's testimony that he spoke in a low tone throughout the meeting, and Plaintiff responded promptly and appropriately to every question or comment by Faught. At no time did Plaintiff voice any difficulty hearing or understanding what Faught said. The primary portion of the meeting was to discuss information that Plaintiff had heard or overheard from other inmates in the jail. Eight minutes and 54 seconds into the recording, Defendant Faught changed the topic to Plaintiff's complaints about the lack of

hearing accommodations by saying "you obviously can carry on a conversation, we've been sitting here talking . . . and I've been talking real quiet and you're hearing every word I've said." Plaintiff responded that "as long as it's quiet I can hear" and stated that he has 30% hearing. Later, he clarified that he has total hearing loss in one ear and about 50% in the other. He said "the problem is my daughter is also hearing impaired . . . she reads lips or she signs and that's why I was trying to video visit." He said "I was just talking shit because I was upset," and that "I can't have her brought up because she's in foster care and the judge just approved us for visits." When either Faught or Barnett asked if he could just use the kiosk, he responded "I don't know if the foster parents are gonna be able to set it up, I don't know." Faught later asked "but you haven't been denied any rights or anything since you've been here?" and Plaintiff answered "no" and said "actually, Captain Barnett's been pretty good, he's helped me out a few times." Plaintiff said he was just "kinda upset" when he complained about not being able to talk to his daughter.

Similarly, Plaintiff revealed no difficulty hearing or communicating with the other speakers in the three sample telephone recordings submitted by Defendants. (Dkt. 22-1 at 42.) The calls vary in length at 3 minutes 41 seconds, 5 minutes 34 seconds, 7 minutes 1 second, and include both male and female callers and background noises. The substance of the calls is irrelevant to this lawsuit, except insofar as there is an absence in them of any discussion of any difficulties Plaintiff might be having during the calls or in general as the result of any hearing loss.

Defendant Barnett also testifies by affidavit that Plaintiff "was able to hear and understand everything Major Faught was saying and carry on the conversation normally" during their March 20 meeting. (Dkt. #22-2 at 3.) He adds that Plaintiff "claimed to be completely deaf in one ear, and limited hearing in the other, however, even if true, this did not appear to impact his ability to carry on a normal, verbal conversation in any of the interactions I had with him." (*Id.*) Barnett

testifies that he "also witnessed Mr. Eidam talk with other inmates and use the phone on several occasions with no accommodations without issue." (*Id.*)

Based on this evidence, Defendants assert that Plaintiff had no right under the Constitution or the Americans with Disabilities Act to the accommodations he sought, and therefore, there was no violation of any such right in this case. (Dkt. #22 at 14–15, 16–19.) Further, they assert that they would be entitled to qualified immunity on the basis that any such right was not clearly established at the time of the events at issue. (*Id.* at 15.) And they urge that Plaintiff's retaliation claim fails in light of the clear evidence of an innocent reason for the temporary discontinuation of video visits in the jail. (*Id.* at 16.)

Defendants also assert that Plaintiff's demand for injunctive relief is mooted by the intervening return of functionality of the video visit system on the jail kiosks. (Dkt. #22 at 23.) And finally, they assert that the lack of any physical injury arising from the alleged violations in this case bars Plaintiff's claim for money damages pursuant to the PLRA's prohibition that "[n]o Federal civil action may be brought by a prisoner . . . for mental or emotional injury while in custody without a prior showing of physical injury." (*Id.* (quoting 42 U.S.C. § 1997e(e)).) They acknowledge that nominal or punitive damages would not be barred but assert that there is no violation in this case that would allow for any damage assessment. (*Id.* at 24.)

### III. Plaintiff's Response and Further Briefing

In his original response to Defendants' motion, Plaintiff complained of logistical issues hampering his ability to respond. (Dkt. #23.) The Court thereafter required Defendants to make arrangements for Plaintiff to be able to listen to the recordings filed in support of their motion and permitted Plaintiff to file a supplemental response. Plaintiff filed a second response before he even

reviewed the recordings, and a third response after he did so. Without objection from Defendants, the Court considers all of Plaintiff's responses as a whole.

First, Plaintiff argues that Defendants tried to manipulate him during "the interview," which the Court understands to be the March 30, 2022 meeting. (Dkt. #23 at 1.) He says that he "signed ASL that he is hard of hearing" and that Defendants led him to believe they were looking into accommodations for him. (*Id.*) Plaintiff downplays the materiality of the number of phone calls he made from jail by saying he "may have tried to place 492 calls, but only a hand full were completed calls." (*Id.*) He reiterates his allegation that a judge ordered visitation with his daughter via video and that the visits were stopped due to retaliation. (*Id.* at 2.) He suggests that Defendants or the Court should seek records from the Michigan Department of Corrections that would confirm his hearing impairment and/or records from a hospital in Indiana to confirm his daughter's impairment. (*Id.*)

Plaintiff maintains that the court-ordered video visits he had with his daughter were by Zoom and took place in a different area of the jail typically used for communication with Child Protective Services (CPS), attorneys, or courts. (Dkt. #23-1 at 1.) They were thus totally separate from the kiosk video function referenced by Defendants. (*Id.*) Plaintiff asserts that Defendants intentionally stopped his Zoom visits and told CPS that they had not received a court order and did not believe that is hearing impaired. (*Id.*) He says Defendants' motion "purpos[e]ly tried to confuse the court by explaining the stop & starting of general kiosk video restrictions when [they] knew their [sic] was a dif[f]erence and that Plaintiff had special zoom/court conference video visits," which were "stopped only to retaliate against Plaintiff." (Dkt. #23-3 at 1.)

Plaintiff asserts that Defendants "are not doctors" and that they were obligated under the law to provide him accommodations once he requested them. (Dkt. #31 at 1.) He says Defendants

have daily contact "with the courts" and could have asked the court for a hard copy of the order for him to have video visits with his daughter, but "their sole purpose was to retaliate against me and a 4yrold little girl." (*Id.* at 2.)

After reviewing the recordings submitted by Defendants, Plaintiff does not dispute their accuracy. (Dkt. #36.) He asserts that "[a]nyone can handpick calls to prove their point" and describes a different call with his family court attorney on some unspecified date when it was loud in his dorm and he and the attorney were "yelling at each other because the Defendants were contacting CPS," and Plaintiff became extremely agitated because he could not hear. (*Id.* at 1–2.) He complains of a lack of discovery responses from Defendants and asks the Court not to rule on their motion until he obtains discovery[2] or after September 2023 when he will be paroled and can gather additional records. (Dkt. #31 at 3; Dkt. #36 at 2.)

Defendants filed two separate replies in support of their motion. (Dkt. ##27, 38.) They argue that the distinction between kiosk video calls and Zoom calls is immaterial because "inmates do not have a constitutional right to zoom/video visits in jail, let alone a clearly established constitutional right." (Dkt. #27 at 2.) And they say that even if it is true that Plaintiff had obtained a court order for video visits as he maintains, the evidence is clear that the jail never received that order. (*Id.*) They reiterate their argument in favor of summary judgment:

> In light of the clearly established law of this Circuit, Plaintiff cannot demonstrate that all reasonable officers would have believed that not allowing Plaintiff to have zoom visits, particularly when such prohibition was applicable to all inmates, the jail did not have a court order stating that Plaintiff must be allowed video visits, and Plaintiff had been observed on numerous occasions communicating normally and effectively in person and on the phone, was a violation of Plaintiff's constitutional rights. In fact *no* reasonable officer would believe such actions, as supported by the uncontroverted summary judgment evidence, violated the constitution.

---

[2] Contemporaneously with his third response, Plaintiff filed a Request for Production seeking copies of recordings of all calls to his family court attorney's phone number. (Dkt. #37.) Prior to that date, Plaintiff never sought leave to conduct any discovery in this matter.

(Dkt. #27 at 3.)

Further, Defendants argue that Plaintiff has "failed to meet his burden of showing that he can not adequately defend against the summary judgment motion without additional discovery" and that the additional material he seeks is unduly burdensome and not proportional to the needs of the case. (Dkt. #38 at 3, 5.) They point out that discovery prior to summary judgment is unnecessary when the requested discovery is not likely to produce sufficient evidence for the nonmovant to prevail and that "vague assertions of the need for additional discovery" do not entitle the nonmovant to a continuance. (*Id.* at 3–4 (quoting *Bauer v. Albemarle Corp.*, 169 F.3d 962, 968 (5th Cir. 1999).)

In his sur-reply, Plaintiff continues to seek the production of recordings of calls between him and his family court lawyer. (Dkt. #40.) He asserts that the production would be no more than three or four calls and that his attorney is "on recording saying the jail and CPS are questioning my deaf/hard of hearing." (*Id.* at 2.) He says the phone calls will show that he "could not hear with background noise and a verbal fight and yelling insued [sic] because I could not hear." (*Id.* at 3.) He further seeks an audiology examination to prove his hearing impairment. (*Id.* at 4.)

## IV. Legal Standards

A motion for summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). The Supreme Court has interpreted the plain language of Rule 56 as mandating "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to

that party's case, on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*) (quoting *Celotex*, 477 U.S. at 323–25). A fact is material if it might affect the outcome of the suit under the governing law. *Merritt-Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957, 961 (5th Cir. 1999). Issues of material fact are "genuine" only if they require resolution by a trier of fact and if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Merritt-Campbell, Inc.*, 164 F.3d at 961. If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

If the movant meets this burden, Rule 56 requires the opposing party to go beyond the pleadings and to show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *EEOC v. Texas Instruments, Inc.*, 100 F.3d 1173, 1180 (5th Cir. 1996); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1046–47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by argument, conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a mere scintilla of evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 585 (1986); *Wallace*, 80 F.3d at 1047; *Little*, 37 F.3d at 1075.

When ruling on a motion for summary judgment, the Court is required to view all justifiable inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *Merritt-*

*Campbell, Inc.*, 164 F.3d at 961. However, the Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as modified*, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a reasonable jury to return a verdict in the opposing party's favor, there is no genuine issue for trial, and summary judgment must be granted. *Celotex*, 477 U.S. at 322–23; *Anderson*, 477 U.S. at 249–51; *Texas Instruments*, 100 F.3d at 1179.

## V. Discussion and Analysis

### A.  Retaliation

Officials may not retaliate against an inmate for exercising his constitutionally protected rights. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). Inmates can state a claim for retaliation in violation of the First Amendment by alleging "that (1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002).

There is no doubt in this case that Plaintiff was availing himself regularly of the jail's grievance procedure, and the Court presumes that he experienced a sufficiently adverse action in the discontinuation of his video visits with his daughter. But causation in a retaliation case requires a showing that "but for the retaliatory motive the complained of incident . . . would not have occurred." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (internal citations omitted). "The relevant showing in such cases must be more than the prisoner's personal belief that he is the victim of retaliation." *Id.* (internal quotation marks omitted). "The inmate must produce direct evidence of motivation, or the more probable scenario, allege a chronology of events from which

retaliation may be plausibly inferred." *Woods*, 60 F.3d at 1166 (internal quotation marks omitted). "Conclusory allegations of retaliation without a specific factual basis will not suffice. *Graves v. Mbugua*, No. 9:16-CV-170, 2020 WL 6947900, at *5 (E.D. Tex. Aug. 13, 2020), *report and recommendation adopted*, No. 9:16-CV-170, 2020 WL 6940783 (E.D. Tex. Nov. 24, 2020) (citing *Woods*, 60 F.3d at 1166). And trial courts are to carefully scrutinize claims of retaliation "[t]o assure that prisoners do not inappropriately insulate *themselves* . . . by drawing the shield of retaliation around them." *Woods*, 60 F.3d at 1166.

Plaintiff cannot establish such causation in this case. Defendants' testimony establishes that all video visits in the jail were temporarily terminated because of a complaint about improper behavior, and that video visits by kiosk have since been reinstated. Plaintiff does not dispute those facts but suggests that his video visits were separate and somehow received separate attention from Defendants. But he also acknowledges that his family court attorney informed him that the jail (as well as CPS) was "questioning" his hearing impairment (Dkt. #40 at 2), and he attached to his own complaint Defendant Faught's grievance response denying his appeal because of Faught's own observation that Plaintiff could hear sufficient to carry on a conversation. In the face of those two non-retaliatory bases for the discontinuation of Plaintiff's video visits, as well as the intervening return of the availability of video kiosk visits, no reasonable factfinder could find that Defendants retaliated against Plaintiff based solely on Plaintiff's belief or supposition that they did. Defendants are entitled to summary judgment on this claim.

B.  Cruel and Unusual Punishment

Plaintiff alleges that the discontinuation of his video visits was cruel and unusual punishment, but that constitutional prohibition found in the Eighth Amendment applies only to convicted prisoners. *Smith v. Harris Cnty.*, 198 F.3d 241, 1999 WL 824545 at *1 n.1 (5th Cir.

1999) (citing *Downey v. Denton County*, 119 F .3d 381, 385 n. 7 (5th Cir.1997)). Because Plaintiff was a pretrial detainee at the time of the events about which he complains, the minimal constitutional standards of his confinement arise from the due process guarantees of the Fourteenth Amendment as found in *Bell v. Wolfish*, 441 U.S. 520, 535 (1979).

Under the Fourteenth Amendment, pretrial detainees have a right to be free from punishment and to be provided with basic human needs, such as medical care and protection from harm. *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (*en banc*).  Pretrial detainees may bring constitutional challenges under two theories: (1) conditions of confinement or (2) episodic acts or omissions. *Est. of Henson v. Wichita Cnty.*, 795 F.3d 456, 462 (5th Cir. 2015). A plaintiff may plead "both alternative theories, and a court may properly evaluate each separately." *Id.* at 464.

An episodic-acts-or-omissions claim "faults specific jail officials for their acts or omissions" causing the complained-of harm. *Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009). To state an episodic-acts-or-omissions claim, the plaintiff must show the defendant acted with subjective deliberate indifference. *Hare*, 74 F.3d at 647–48. A defendant acts with subjective deliberate indifference when he "knows of and disregards an excessive risk" of serious harm to a pretrial detainee. *Kelson v. Clark*, 1 F.4th 411, 417 (5th Cir. 2021) (quoting *Garza v. City of Donna*, 922 F.3d 626, 635 (5th Cir. 2019)). In other words, to establish deliberate indifference, a plaintiff must show (1) the defendant was aware of facts from which he could infer a substantial risk of serious harm existed, and (2) the defendant "actually drew that inference." *Id.* (quoting *Dyer v. Houston*, 964 F.3d 374, 380 (5th Cir. 2020)). "[K]nowledge of a substantial risk of harm may be inferred if the risk was obvious." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006).

To state a conditions-of-confinement claim, a plaintiff must show (1) a rule, restriction, intended condition or practice, or sufficiently extended or pervasive act or omission, (2) "which was not reasonably related to a legitimate government objective," (3) caused the constitutional violation. *Duvall v. Dallas Cnty.*, 631 F.3d 203, 207 (5th Cir. 2011) (quoting *Hare*, 74 F.3d at 645). A condition may reflect a *de facto* policy when "evidenced by a pattern of acts or omissions 'sufficiently extended or pervasive . . . to prove an intended condition or practice.'" *Id.* (quoting *Shepherd*, 591 F.3d at 452). The violation must be more than *de minimis*—the plaintiff must show "a pervasive pattern of serious deficiencies." *Id.* at 208 (quoting *Shepherd*, 591 F.3d at 454). Proving such a pattern does not require providing "specific examples of other instances of detainees who suffered [a similar] fate." *Montano v. Orange Cnty.*, 842 F.3d 865, 876 (5th Cir. 2016). However, "isolated examples of illness, injury, or even death, standing alone, cannot prove that conditions of confinement are constitutionally inadequate." *Shepherd*, 591 F.3d at 454. Plaintiffs face "a heavy burden" when attempting to prove a pattern. *Id.* at 452.

In this case it does not matter whether Plaintiff's claim is deemed to be a conditions claim or an episodic claim, because the facts in the record prove beyond reproach that he had no excessive risk of harm or any other constitutional deficiencies in the absence of his requested accommodations. No reasonable factfinder could listen to the recorded meeting between Plaintiff and Defendants Faught and Barnett and find that Plaintiff required the aid of any sign language interpreter or other assistance to communicate effectively with jail staff, medical personnel, or anyone else in person. In addition to the ease with which he plainly heard and responded to Faught during that meeting, the primary purpose of the meeting was to discuss Plaintiff's offer to be an informant regarding information he had *heard* from and about his fellow inmates. There is thus no

genuine issue of fact concerning Plaintiff's ability to communicate and function within the jail setting without accommodations.

Likewise, there is no genuine issue of fact concerning his ability to communicate by phone. Despite occasional background noise and distractions on the part of the call recipients, Plaintiff had no apparent difficulty understanding or speaking to them, and there was no discussion during the calls of any hearing impairment or the need for the speakers to speak more loudly or clearly. Plaintiff carried on these phone calls in a normal conversational style. And the fact that he attempted more than 490 calls from jail indicates his own confidence in his ability to communicate by phone, regardless of how many of those calls were answered.

Plaintiff's true concern, as he acknowledged in his meeting with Faught and elsewhere in his briefing, is that *his daughter* suffers an impairment that would prevent *her* from hearing and understanding him in a phone call. But nowhere does Plaintiff allege or cite any law to the point that his jailers owe his daughter any duties under the Constitution. And it is clear that—aside from any restrictions imposed by the family court judge, over which Defendants have no control—his daughter was free to visit him in person at the jail throughout Plaintiff's time there. And it is just as clear that—aside from the temporary shutdown of the video capabilities on the jail kiosks and any technological challenges on the part of the daughter's foster parents, neither of which amount to unreasonable or improper acts by Defendants—they were free to conduct video visits by kiosk. And finally, Plaintiff mentions that his daughter could not read or write at her age, but there was nothing stopping him from writing her letters to be read by her foster parents or from her responding in letters dictated to them. Accordingly, this is not a case where anyone could reasonably find that Defendants effected any substantial hardship on Plaintiff's ability to visit with or otherwise maintain a relationship with his daughter while he was (is) in jail. The Court should

therefore conclude as a matter of law that Defendants did not violate Plaintiff's Fourteenth Amendment rights in this case and award them summary judgment on that claim.

Alternatively, even if the facts of this case were found to violate the Fourteenth Amendment, that violation was not clearly established at the time of the events giving rise to this suit. The defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity inquiry determines whether a plaintiff has shown "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al–Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow*, 457 U.S. at 818). The court has "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

An additional consideration exists in the analysis of a qualified immunity defense on a motion for summary judgment. Once a defendant invokes qualified immunity, "the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." *McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013) (internal citation omitted). Thus, although the court "draws all factual inferences in favor of the non-movant, . . . once the issue of qualified immunity is raised, the non-movant (i.e. the plaintiff in this case) bears the burden of rebutting the defense." *See Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005) ("[w]e do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs."); *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010) ("the plaintiff bears the burden of negating qualified immunity…"). "The plaintiff can defeat summary

judgment by rebutting the qualified immunity defense as a matter of law or by raising a genuine fact dispute that is material to the issue of immunity." *Johnson v. Eggebrecht*, No. 9:14-CV-144, 2015 WL 9703791, at *4 (E.D. Tex. Dec. 28, 2015), *report and recommendation adopted*, No. 9:14-CV-144, 2016 WL 165091 (E.D. Tex. Jan. 14, 2016) (citing *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015)). "[S]ummary judgment should be denied if the plaintiff's version of the facts would permit a finding that the official is not entitled to qualified immunity." *Id.* (citing *Lytle v. Bexar Cnty.*, 560 F.3d 404, 418 (5th Cir. 2009)).

Defendants assert that reasonable officials would not have known that it violated Plaintiff's rights to deny him the accommodations that he sought under the facts of this case. Plaintiff responds that "Defendants loose [sic] qualified immunity when the[y] violated state & federal law," (Dkt. #31 at 2), which wholly misses the point that qualified immunity exists to shield defendants from liability for violations they did not know they were committing. Plaintiff does not cite any law that would have clearly established at the time of these events that denial of the requested accommodations on similar facts would constitute a violation. Accordingly, Defendants would be entitled to qualified immunity even if a violation were found in this case.

C.  Discrimination and Accommodation

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. It is in essence "a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Accordingly, the threshold element of a typical equal protection claim is "that two or more classifications of similarly situated persons were treated differently." *Gallegos-Hernandez v. United States*, 688 F.3d 190, 195 (5th Cir. 2012). "A prisoner's vague and conclusory allegations that his equal protection rights have been violated

are insufficient to raise an equal protection claim." *Propes v. Mays*, 169 F. App'x 183, 185 (5th Cir. 2006).

To state discrimination claim under the Fourteenth Amendment, a plaintiff must typically allege that a government actor "intentionally discriminated against the plaintiff because of membership in a protected class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999). Alternatively, a plaintiff may state a "class of one" equal-protection claim by alleging that he personally "has been irrationally singled out" for unfavorable treatment. *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

Plaintiff here does not claim to be a member of any recognized protected class. *See Sonnier v. Quarterman*, 476 F.3d 349, 368 (5th Cir. 2007) ("Examples of suspect classes are those based upon race, ancestry, or religion."); *Doe v. Univ. of N. Texas Health Sci. Ctr.*, No. 4:21-CV-00658-O, 2023 WL 4166458, at *5 (N.D. Tex. June 23, 2023) (observing that "the Supreme Court has held that the disabled . . . are not a protected suspect class for purposes of equal protection analysis"). And he does not claim that he has been treated worse than "similarly situated" inmates. Any claim of discrimination under the Fourteenth Amendment, therefore, is not enough to survive summary judgment. *See Reagan v. Burns*, No. 3:16-CV-2590-G-BH, 2019 WL 6733023, at *12 (N.D. Tex. Oct. 30, 2019), *report and recommendation adopted*, No. 3:16-CV-2590-G (BH), 2019 WL 6729085 (N.D. Tex. Dec. 10, 2019) ("The Fifth Circuit has held that bare and conclusory assertions are insufficient to support a 'class of one' equal protection claim, particularly where these assertions offer no basis upon which to determine that persons similarly situated to the plaintiff were treated differently without rational basis.") (citing *Bell v. Woods*, 382 F. App'x 391, 393 (5th Cir. 2010)).

Plaintiff's complaint can also be understood to allege that Defendants failed to accommodate his disability pursuant to Title II of the ADA, which prohibits "disability discrimination in the provision of public services." *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir. 2011). Specifically, Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132.

"Title II [of the ADA] imposes an obligation on public entities to make reasonable accommodations or modifications for disabled persons, including prisoners." *Garrett v. Thaler*, 560 F. App'x 375, 382 (5th Cir. 2014) (*per curiam*) (quoting *Tennessee v. Lane*, 541 U.S. 509, 531 (2004) and *Pennsylvania Dep't of Corrections v. Yeskey*, 524 U.S. 206, 213 (1998)); *see also Cadena v. El Paso County*, 946 F.3d 717, 723 (5th Cir. 2020). "[A] public entity's failure reasonably to accommodate the known limitations of persons with disabilities can also constitute disability discrimination under Title II." *Windham v. Harris County, Texas*, 875 F.3d 229, 235 (5th Cir. 2017) (citations omitted).

"To succeed on a failure-to-accommodate claim, a plaintiff must prove: (1) he is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered entity; and (3) the entity failed to make reasonable accommodations." *Ball v. LeBlanc*, 792 F.3d 584, 596 n.9 (5th Cir. 2015) (citation omitted). The ADA defines "disability" to mean: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment . . .." 42 U.S.C.A. § 12102(1).

To recover monetary damages based on a failure to accommodate a plaintiff must also prove intentional discrimination. *See Smith v. Harris County, Texas*, 956 F.3d 311, 318 (5th Cir. 2020) (citing *Delano-Pyle v. Victoria County, Texas*, 302 F.3d 567, 574 (5th Cir. 2002)). In the context of a failure-to-accommodate claim, intentional discrimination requires actual knowledge that an accommodation is necessary. *See Cadena*, 946 F.3d at 724 ("[T]his court has affirmed a finding of intentional discrimination when a county deputy knew that a hearing-impaired suspect could not understand him, rendering his chosen method of communication ineffective, and the deputy made no attempt to adapt."). If a defendant has attempted to accommodate a plaintiff's disability, then intentional discrimination requires knowledge "that further accommodation was necessary." *Id.* at 726.

The Fifth Circuit has clarified that intentional discrimination in this context requires a showing of "something more than 'deliberate indifference.'" *Id.* at 724. Deliberate indifference is already an "extremely high" standard to meet. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). To demonstrate deliberate indifference a prisoner must show that the defendant knew of but disregarded an excessive risk to inmate health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* For example, to prevail on a claim of deliberate indifference where serious medical needs are concerned the prisoner must "submit evidence that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted).

Plaintiff does not come close to meeting this standard. First, no reasonable factfinder could conclude from the evidence in the record that Plaintiff is disabled for the purposes of the ADA. Even assuming that Plaintiff has some degree of hearing impairment, "merely having an impairment does not make one disabled for purposes of the ADA." *Rodriguez v. Alcoa Inc*., 805 F. Supp. 2d 310, 316 (S.D. Tex. 2011) (citing *Hamilton v. Southwestern Bell Telephone Co.*, 136 F.3d 1047, 1050 (5th Cir. 1998)). Where a plaintiff's "hearing impairment in no way affects how he lives his normal life," he is not "substantially limited" in one or more major life activities as required to establish a disability under the ADA. *Id.* at 316–17. Plaintiff maintains that, of the over 490 calls he made from jail, a small number of calls to his family court attorney would reveal that he had difficulty hearing her. In the context of the other facts of this case, that limitation could not be deemed "substantial" by any reasonable factfinder.

Second, no jury could find that Defendants were subjectively aware that Plaintiff required the accommodations he requested. The Fifth Circuit has found that "plaintiffs raised a fact issue as to intentional discrimination with evidence that defendants 'ignored clear indications that they were dealing with a hearing-impaired person with special communication needs.'" *Phillips next friend of J.H. v. Prator*, No. 20-30110, 2021 WL 3376524, at *3 (5th Cir. Aug. 3, 2021) (quoting *Perez v. Drs. Hosp. at Renaissance, Ltd.*, 624 F. App'x 180, 185–86 (5th Cir. 2015)). There is no such evidence in this case. To the contrary, the record evidence establishes that all observations by Defendants were that Plaintiff had no difficulty communicating verbally with them and others in the jail. Plaintiff's own unsubstantiated threats and demands do not amount to the "known limitations" or "clear indications" of an impairment that would make Defendants liable for failing to provide accommodations. Accordingly, there is no genuine issue of material fact in this case from which a jury could find a violation of Plaintiff's rights under the ADA.

Alternatively, Defendants would be entitled to qualified immunity on this claim as well. *See Clark v. Woods*, 275 F.3d 1079 (5th Cir. 2001) (explaining that "we have held [qualified immunity] applicable to both ADA and Rehabilitation Act claims"). Plaintiff's failure to cite any law clearly establishing that the ADA required accommodations for an inmate with the demonstrated ability to communicate verbally with jail staff, fellow inmates, and other parties to telephone calls cannot overcome Defendants' assertion of qualified immunity.

### D. County Liability and Official Capacity Claims

Municipalities such as Henderson County are only liable under Section 1983 when a plaintiff establishes that the deprivation of his rights was the result of a municipal policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). For the reasons explained above, no reasonable factfinder could find any violation of Plaintiff's rights on the facts of this case. Furthermore, Defendants have presented evidence that Henderson County does not have any policy or practice that denies the rights of hearing-impaired inmates. Plaintiff has not responded with any evidence that such policy or custom exists. There is, therefore, no basis on which Henderson County could be found liable in this case.

Plaintiff's claims against all the other Defendants in their official capacities are effectively claims against Henderson County. *See Bennett v. Pippin*, 74 F.3d 578, 584 (5th Cir. 1996) (suit against county official in his official capacity is suit against county "directly in everything but name"). Accordingly, his claims against Faught and Barnett fail for the same reason as his claim against the County.

## VI. Conclusion

Because it is plain from the analyses above that Defendants are entitled to summary judgment, it is unnecessary for the Court to address Defendants' arguments of mootness or the

PLRA's requirement of physical injury. The evidence in the record simply establishes beyond reasonable disagreement that Plaintiff did not need the accommodations he demanded, and that Defendants did not violate any of his rights or effect any harm upon him by denying them.

The Court can reach this conclusion regardless of what might be discovered by acquiring Plaintiff's Michigan prison records or recordings of his calls to his family court attorney or by delving into his family court records and what orders might have been entered therein. Plaintiff's obvious ability to communicate effectively verbally both in person and by phone would not be diminished by any confirmation that he suffers some degree of hearing loss, as he alleges. Nor could it be rebutted by his efforts to persuade his family court attorney—the person who would be responsible for attempting to persuade the family court judge to order video visits with his daughter and could not ethically present a claim she knew to be false—that he had difficulty communicating by phone.

And finally, a family court order permitting Plaintiff to have Zoom visits with his daughter in an action to which Defendants were not parties would have questionable binding effect on jail administrators whose expertise in managing the day-to-day operations of a jail demand a great deal of deference. But more importantly, even a direct violation of a state court's order would be a matter for litigation in that court and the state courts of appeal and would not independently constitute a violation of any federal right that would be cognizable in this case. *See Storemski v. Klevenhagen*, 176 F.3d 478, 1999 WL 152899 (5th Cir. 1999) (*per curiam*) (holding that state-court "order cannot serve as a substantive basis for a § 1983 claim because such orders [d]o not create 'rights, privileges, or immunities secured by the Constitution and laws'" of the United States (citation omitted)); *Nelson v. Murphy*, 44 F.3d 497, 502 (7th Cir. 1995) ("Violation of a state court's order is contempt of court, not a violation of the Constitution."). The state court order with

which Plaintiff is preoccupied, therefore, is immaterial to whether Plaintiff's federal constitutional or statutory rights were violated in this case.

And because Plaintiff did not timely seek discovery, and the discovery he now seeks would not change the outcome of this case, his requests for discovery and a stay of this ruling should be denied. This conclusion is further supported by the absence of any effort on Plaintiff's part to seek or justify his need for additional information in other ways. For example, Plaintiff could presumably have obtained an affidavit from his family court attorney describing her own experience of any difficulties communicating with Plaintiff by phone as he alleges, in a manner that would not implicate or require a waiver of attorney-client privilege. Having failed to take that obvious step in the amount of time this case or the Defendants' motion has been pending, Plaintiff should not now be heard to complain about missing evidence.

Finally, the Court observes that in seeking injunctive relief on behalf of "any Hearing Impa[i]red person," Plaintiff effectively attempts to represent an entire class of inmates. (Dkt. #1 at 7.) But federal law requires parties in federal court to litigate their cases "personally or by counsel" and does not permit a layman to represent the interests of other parties. 28 U.S.C. § 1654; *Mosley v. Bowie Cty. Texas*, 275 F. App'x 327, 328 (5th Cir. 2008) ("Walter A. Mosley Jr. is not an attorney and thus may not represent another party in federal court."); *Gonzales v. Wyatt*, 157 F.3d 1016, 1021 (5th Cir. 1998) ("[I]n federal court a party can represent himself or be represented by an attorney, but cannot be represented by a nonlawyer.").

Moreover, representing a class is a role for which Plaintiff, as a pro se inmate, is simply not adequate. *Lynn v. Davis*, No. M-18-CV-162, 2019 WL 570770, at *2 (S.D. Tex. Jan. 28, 2019), *report and recommendation adopted*, No. CV M-18-162, 2019 WL 937058 (S.D. Tex. Feb. 26, 2019) (observing that "courts have recognized that a pro se prisoner is not adequate to represent

the interests of his fellow inmates in a class action" (punctuation and citation omitted)); *David v. Hurst*, 2003 WL 21289968, at * 1 (N.D. Tex. May 27, 2003) ("Allowing a pro se plaintiff to represent a purported class is a dangerous proposition in that the competence of a layman representing himself [is] clearly too limited to allow him to risk the rights of others." (punctuation and citation omitted)). Accordingly, the Court's evaluation in this case is confined to Plaintiff's prosecution of his own rights.

<u>RECOMMENDATION</u>

For the reasons explained above, the undersigned recommends that Defendant's motion for summary judgment (Dkt. #54) be **GRANTED**, and Plaintiff's motion to produce (Dkt. #37) should be **DENIED.** Judgment should enter for Defendants, and Plaintiff's claims should be **DISMISSED** with prejudice on their merits.

Within fourteen (14) days after receipt of the Magistrate Judge's Report, any party may serve and file written objections to the findings and recommendations contained in the Report. A party's failure to file written objections to the findings, conclusions and recommendations contained in this Report within fourteen days after being served with a copy shall bar that party from *de novo* review by the district judge of those findings, conclusions and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

**So ORDERED and SIGNED this 1st day of August, 2023.**

JOHN D. LOVE
28     UNITED STATES MAGISTRATE JUDGE